# UNITED STATES DISTRICT COURT
# DISTRICT OF CONNECTICUT

| | |
|---|---|
| UNITED STATES OF AMERICA<br><br>v.<br><br>EDDIE CHAN,<br>    *Defendant*. | No. 3:17-cr-234 (JAM) |

## ORDER RE MOTION TO STAY

Defendant Eddie Chan is at the mercy of a compulsive gambling disorder. It led him to steal hundreds of thousands of dollars over the course of three years from a company for whom he worked as chief financial officer. He did not report his stolen money to the Internal Revenue Service, and he pleaded guilty for failing to do so.

At sentencing Chan convinced me that his gambling disorder was a mitigating condition that warranted a sentence of probation rather than a Sentencing Guidelines range of imprisonment. Chan is happy about that. But he is not happy that I also concluded his employers should know about his conviction before they entrust him with a finance job. I decided to require notification to his employers because I took Chan and his counsel at their word that Chan's decades-long gambling disorder was "pathological," that it was "insidious," that it involved self-delusion about taking other people's money, and that it was "always lurking" and subject to relapse notwithstanding his significant efforts at rehabilitation.

Chan is now appealing this employer notification condition. He thinks he should be free to work with his employers' finances while keeping them in the dark about his conviction. And now by moving for a stay of this condition pending appeal he hopes to delay his employers' learning the truth for however long it takes for his appeal to play out.

1

I don't agree. In light of all the factors that govern a court's authority to enter a stay pending appeal, I conclude that Chan has not shown a likelihood of success on the merits, that he has not shown that he will suffer irreparable harm, and that he has not shown that the public interest weighs in his favor. Accordingly, I will deny Chan's motion to stay execution of the employer notification condition pending the outcome of his appeal, although I will temporarily extend the stay that is now in place in order to allow Chan to promptly seek a stay pending appeal from the court of appeals.

## BACKGROUND

On October 26, 2017, Chan appeared before the Court to enter a plea of guilty to making and subscribing a false tax return, in violation of 26 U.S.C. § 7206(1). His guilty plea arose from his failure to report on his federal tax returns hundreds of thousands of dollars that he stole from a fine arts company in New York City, where he had been employed as a bookkeeper and chief financial officer. All in all, Chan embezzled $386,362 from the art firm's accounts beginning in 2013, continuing throughout 2014, and into 2015.

According to Chan, he stole money to feed a pathological gambling disorder that has plagued him for most of his life. Now almost 60 years old, Chan first got hooked on gambling as a teenager when he started betting on the horses. He dropped out of high school to start working but "[a]s I started working and making more money, my gambling got heavier," and "[o]ne time I was gambling and was losing $1000 a day," and "I couldn't find money fast enough to get to the next day." PSR ¶ 46.

Gambling went on to wreck Chan's first marriage in 1991. According to Chan, "[i]t destroyed my first marriage," and "I had issues back then," and he "went and got help and was

good for 5 to 6 years." *Ibid.* But "[t]hen I got remarried and got complacent," and once again "[a] little fun turned into full time, full blown addiction." *Ibid.*

Chan's gambling addiction raged on for the next 15 years or so until he got caught stealing from his employer and faced the criminal investigation and prosecution in this case. Chan not only hid his gambling and thieving from his employer but he hid all that from his family as well. According to Chan, his family "always knew he gambled, but they did not know the extent of his addiction until he pled guilty for the instant offense." PSR ¶ 46.

Chan started gambling treatment again in November 2015. Yet notwithstanding his participation in weekly treatment sessions, he continued to gamble until before Thanksgiving 2017.

Chan's employer fired him from his job after learning that he had been stealing money. Prior to pleading guilty in this case, Chan secured three new financial accounting jobs, including one full-time job with a company in New Canaan, Connecticut, and two part-time jobs with companies in Stamford, Connecticut. He did not tell his full-time employer about his guilty plea and asked the probation officer who prepared his presentence report not to do so.

Chan described to the probation officer who wrote his presentence report about how gambling had taken over his life: "The reason that it got out of control is because I was helpless and powerless over it. Gambling is such an insidious disease, no different than drugs or alcohol. The only difference is they need it for their physical issues, [while] for gamblers it's a mental issue." PSR ¶ 44. Chan also wrote a letter to the Court for sentencing purposes describing his life-long battle against gambling and noting in part that he had relapsed because "this insidious disease, compulsive gambling, is always lurking." Doc. #21-1 at 3.

At sentencing, Chan faced a sentencing guideline range of between 12 to 18 months of imprisonment. But he argued for a downward departure on grounds of what his counsel described as no less than a "mental illness" of "pathological gambling." Doc. #45 at 7; Doc. #21 at 9-10 (requesting "diminished capacity" departure pursuant to USSG § 5K2.13). Among other documents, Chan submitted a gambling "fact sheet" attesting that "[u]p to half of persons with severe gambling disorder commit illegal acts to support their gambling" and that "[e]mbezzlement is rare, but gambling-related fraud and embezzlement cases are growing especially in regions close to casinos." Doc. #21-7 at 2.

Chan's own gambling treatment provider attested to the criminal dangers that accompany severe gambling disorders: "[T]his disease is so severe, that illegal acts such as writing bad checks and stealing or 'borrowing' money, or goods from friends or relatives, with the intent of returning these items is very common," and "[e]mbezzlement cases, in fact, are growing within this population." Doc. #21-6 at 2.

Chan's counsel insisted at the sentencing hearing that Chan had taken his employer's money believing that he would strike it rich and pay it all back. I asked counsel "[s]o when you say he believed he was going to pay it back, was he essentially deluded about that by his sickness?" Counsel replied: "I believe so, by the sickness," and he went on to describe the views of Chan's treatment provider that "in a lot of people she treats [for gambling disorder] that, you know, they have deluded themselves into thinking that these are loans or I just am this close to winning and everything is going to be fine." Doc. #45 at 8-9.

Chan's counsel also acknowledged that Chan had lied to law enforcement agents when they initially questioned him about his diversion of funds (calling the large amount of monies deposited to his bank account a "bonus"). Although he soon reached out to the agents to set the

record straight, he nonetheless continued to gamble even after knowing that he was under investigation. *See* Doc. #25 at 2-3, 7. During the course of the Government's investigation, the Government was assured by Chan's "gambling counselor" that Chan "had ceased gambling and had excluded himself from all gambling operations in the state," only for the Government to learn later on its own "that was not the case," and the Government "verified that his activity at off-track-betting parlors had continued and continued consistently." Doc. #45 at 27.

To explain the fact that Chan had kept on gambling even after being confronted by law enforcement authorities, Chan's counsel observed that "long-term addiction … doesn't go away very easily." *Id.* at 10. He cited again the views of the treatment provider that "[w]hat she would see in her patients and indeed with Mr. Chan is that there's a resistance to thinking that this is a problem, resistance to thinking that they need to stop." *Id.* at 10-11.

No matter the risk of relapse, Chan's counsel stated at sentencing that "our efforts at rehabilitation don't have to be perfect, that what can happen is that we have a lot of false starts, but really we're on an upward trajectory now where Mr. Chan has excluded himself from all of the gaming establishments in Connecticut and in New York." *Id.* at 11. When I asked about whether Chan engages in internet gambling, Chan's counsel had no reply: "I don't know, your Honor, off the top of my head whether that includes internet gaming." *Ibid.*

At sentencing I described at length to Chan's counsel my concerns about the risk that Chan's gambling addiction posed to any current or future employers in the event that they unknowingly entrusted him with access to their assets and funds:

> So you have somebody here who, by your description, is a pathological gambler, doesn't go away easily, it's been a lifelong issue for him. Although he is not—does not have criminal history, he's not a criminal recidivist, he is a gambling recidivist, right, because he's had times, even by his own acknowledgement and his own letter to the Court, where he addresses issues and then relapses.

5

He's very secretive, right, from what we know. His wife didn't know about, according to the Presentence Report, the extent of what he was doing even just until about the time that he pled guilty last October.

When you combine all of those and a track record of having taken hundreds of thousands of dollars from an employer here, I can't see how it would be consistent with serving the purposes of protecting the public not to require notification to employers, any employers who trust him in some manner with financial activities of some sort in which he might have access to financial institutional assets or access to confidential financial information, essentially access to financial assets or assets in general that could be used for purposes of perpetuating his pathological gambling disorder that you told me about.

You've said one of the hallmarks of this disorder is self-delusion, right? It's dishonesty and then it's wild notions that somehow you're going to pay back money that you started taking from an employer who doesn't know the money is being taken.

So that's a real concern for me here. I have to say I'm very concerned about the idea that Mr. Chan could be working for it sounds like three employers in a bookkeeping financial kind of capacity and those employers are oblivious, oblivious, as far as I can tell, to the risk, the very real risk that's posed here by Mr. Chan. It's an unfortunate one.

….

I realize that there might be an interest in saying, well, maybe these employers are not going to continue to employ him if they learn the truth, but I have to think that's something for them to make a decision about, not for Mr. Chan to make a decision about, not for the one who has already stolen money from an employer and not reported it on tax returns.

I'm wondering what your response to that is. Why shouldn't the employer know? Why shouldn't the Court impose the following condition, simply that the United States Probation Office require Mr. Chan to advise the Probation Office of any employer for whom he is working in any kind of financial capacity, and then that the United States Probation Office shall furnish to that employer the copy of the charge, the copy of the plea agreement along with its stipulation of offense conduct, and a copy of the judgment and conviction order in this case? And so the employer then can make a determination after due consideration of whether Mr. Chan should continue to be employed there. The notification could be delayed for a suitable period of time to the extent that Mr. Chan would wish to broach the subject as an initial matter with the employer, but my inclination is to impose a condition akin to that type of condition.

. . . .

It's like a huge big red flashing light in this courtroom strobing away saying this person is an imminent risk to take [an] employer's money. So I think there's a very high level of risk. And then the question is what's an appropriate response to that.

6

*Id.* at 16-19.

The Government voiced similar concerns about the risk that Chan poses to his current or future employers, aptly comparing him to a nurse who is convicted for opioid use and whose future employers should be alerted before handing her the keys to the medicine cabinet:

> We, on the government side, feel very strongly that if we hadn't instituted prosecution, Mr. Chan would almost surely be gambling today. We recognize the fact of conviction has collateral consequences on him for his employment. But to some degree, future employers should be made aware of Mr. Chan's pathology of his addiction. I think it's analogous to a nurse or other medical professional who might develop an addiction to opioid medication and ends up stealing opioids from her employer and using them or diverting them and distributing them on the street. Future employers should be aware of that addiction so that at least initially when the nurse arrives to work she doesn't have unlimited or unsupervised access to the medication. And as she recovers in her recovery and builds greater trust, then maybe the employer will take that into account. But surely if only to protect that nurse herself, let alone the community, employers should be made aware of someone's strong addiction and past.
>
> I hope that in today's society we recognize what addiction is, [and] we recognize it as a form of mental illness, and acknowledge that people do their best to struggle with it. But it also does pose a risk not only to the addict, but to others around him or her.

*Id.* at 33-34. The prosecutor added that Chan "really should be notifying his employers," and "[h]e's much better off bringing it to their attention and explaining," because "[i]f they learn about it through the press or other means, they're going to think he concealed it from them and wasn't fully honest and forthcoming." *Id.* at 35. "So I do think it's important that his employers receive notification. And I hope he'll do that without even a condition from the Court." *Id.* at 35-36.

I decided in large part because of the severity of Chan's gambling disorder to vary downward from the Sentencing Guidelines recommended range of imprisonment and to impose a five-year term of probation. Among the conditions of probation I imposed were that Chan pay

7

restitution, engage in no gambling, and continue to participate in treatment for his gambling disorder.

With respect to whether Chan's employers should learn about his conviction, I decided to propose a specific condition and invited the parties to submit briefing on this issue. I proposed the following probation condition:

> You shall promptly advise the U.S. Probation Office of the name and address of any employer for whom you are employed in any capacity involving accounting, bookkeeping, participation in any kind of financial transactions, or access to any financial assets. The U.S. Probation Office shall within 7 days of notification furnish the employer a copy of the charging information, the plea agreement, and the judgment and order of conviction.

Doc. #28. The parties thereafter submitted briefing, and I subsequently entered an order adopting this condition of probation over Chan's objection for substantially the reasons well-stated by the Government in its briefing.

I was (and remain) puzzled by Chan's objection to having the Probation Office notify his employers about his conviction. After all, as a part of his plea agreement, Chan expressly agreed that "the Government reserves the right to notify … *any* current or future employer of the fact of his conviction." Doc. #5 at 8 (emphasis added). I cannot fathom why Chan agreed that the U.S. Attorney's Office may indefinitely notify *any* of his current or future employers about his conviction but now objects if the Probation Office does so.

In any event, following my entry of this employer notification condition, Chan decided to file a notice of appeal. Oddly, however, he did not move to stay enforcement of the condition pending appeal. So I convened a teleconference to see if Chan intended to seek a stay. Chan advised that he would move for a stay. He and the Government have both filed briefing, and this ruling now follows.

**DISCUSSION**

Rule 38 of the Federal Rules of Criminal Procedure authorizes a court to enter a stay pending appeal of a sentence of probation, as well as to enter a stay of the terms of any court-ordered employment disability. *See* Fed. R. Crim. P. 38(d) & 38(g). A stay pending appeal "is not a matter of right," and "[t]he party requesting a stay bears the burden of showing that the circumstances justify an exercise of that discretion." *Nken v. Holder*, 556 U.S. 418, 433-34 (2009). The traditional factors that govern whether to grant a stay of court order pending appeal are "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies." *Id.* at 434. I will consider these factors in turn.

### *Likelihood of success*

To evaluate Chan's likelihood of success on appeal, I must consider at the outset whether I have authority at all to impose a condition of probation that requires notification to an employer of a defendant's conviction. Congress authorizes a sentencing court to set conditions of probation if these conditions (1) are "reasonably related" to the general factors of sentencing that a court must consider under 18 U.S.C. § 3553, and (2) if "such conditions involve only such deprivations of liberty or property as are reasonably necessary" for the purposes of sentencing. 18 U.S.C. § 3563(b). Among the purposes of sentencing that a court should consider is the need "to afford adequate deterrence to criminal conduct," 18 U.S.C. § 3553(a)(2)(B), as well as "the need for the sentence imposed … to protect the public from further crimes of the defendant." 18 U.S.C. § 3553(a)(2)(C).

Congress contemplated that courts would impose occupational restrictions as a part of sentencing, whether such restrictions might include an outright bar on employment in certain kinds of jobs or less onerous restrictions like the one involved here requiring that any employer be apprised of a defendant's conviction. In specifying discretionary conditions of probation that a court may impose, Congress specifically provided that a court may require a defendant to "refrain … from engaging in a specified occupation, business, or profession bearing a reasonably direct relationship to the conduct constituting the offense, or engage in such a specified occupation, business, or profession only to a stated degree *or under stated circumstances*." 18 U.S.C. § 3563(b)(5) (emphasis added).

Similarly, the U.S. Sentencing Guidelines allow for a court to impose an occupational restriction if the court "determines that: (1) a reasonably direct relationship existed between the defendant's occupation, business, or profession and the conduct relevant to the offense of conviction; and (2) imposition of such a restriction is reasonably necessary to protect the public because there is reason to believe that, absent such restriction, the defendant will continue to engage in unlawful conduct similar to that for which the defendant was convicted." USSG § 5F1.5(a); *see also United States v. Lombardi*, 2018 WL 1415138, at *2 (2d Cir. 2018) (citing § 5F1.5 and invalidating an employer notification condition for lack of any reasonably direct relationship between defendant's work as an auto mechanic and defendant's use of a computer for child pornography offense).[1]

---

[1] In light of the fact that Chan pleaded guilty to a tax crime rather than a theft or embezzlement crime, Chan argues that it was improper for the Court to impose an employer notification requirement that was based on his theft or embezzlement activity. This argument runs contrary to the language of both the statute and Sentencing Guidelines that sensibly allow for an occupational restriction to be imposed in light of related or relevant conduct. *See* 18 U.S.C. § 3565(b)(5) (employment restriction may apply to employment "in a specified occupation, business, or profession bearing a reasonably direct relationship *to the conduct* constituting the offense") (emphasis added); USSG § 5F1.5(a)(1) (employment restriction may apply where there is "a reasonably direct relationship [that] existed between the defendant's occupation, business, or profession *and the conduct relevant to the offense of conviction*") (emphasis added); *see also United States v. Britt*, 332 F.3d 1229, 1232 (9th Cir. 2003) ("Only if the

There is no doubt in my mind that the employer notification condition I have imposed satisfies the first requirement of USSG § 5F1.5(a)—that it involves a "reasonably direct relationship" between Chan's finance-related work and conduct relevant to his offense of conviction. It was because of his trusted bookkeeping and chief financial officer role that Chan was able from 2013 to 2015 to embezzle nearly $400,000 from his New York art firm employer. Moreover, in contrast to Chan's own agreement that allows for the U.S. Attorney's Office to indefinitely notify "any" current or future employer of his conviction, I have narrowly tailored the Court's employer notification condition to apply only to any finance-related employment that Chan might hold or pursue during the limited term of probation.

Nor is there any doubt in my mind that the employer notification condition satisfies the second requirement under USSG § 5F1.5(a)—that the restriction is "reasonably necessary to protect the public because there is reason to believe that, absent such restriction, the defendant will continue to engage in unlawful conduct similar to that for which the defendant was convicted." For most of his life, Chan has been consumed by a pathological gambling addiction. After it wrecked his first marriage, he bested the addiction but only for a while before relapsing again. And even after being confronted by law enforcement in this case and embarking again on gambling treatment, he kept on with his gambling activities (apparently deceiving his own gambling treatment provider that he was no longer gambling when in fact the Government learned that he was).

---

court determines that the defendant's occupation is related to the offense of conviction can occupational restrictions be imposed"). There is no question that Chan's embezzlement was related to his tax offense here, because Chan's sentencing guidelines range was increased pursuant to USSG § 2T1.1(b)(1) due to his failure to report income from unlawful activity. In *United States v. Peterson*, 248 F.3d 79, 85-86 (2d Cir. 2001) (*per curiam*), the Second Circuit vacated an employer notification condition for a federal bank larceny defendant that required the defendant to notify his employer about a prior state court incest conviction. Chan's reliance on *Peterson* is misplaced, because the employer notification there did not involve conduct (incest) that was relevant to or related to the federal offense of conviction (bank larceny).

Even by Chan's and his own counsel's reckoning, his addiction is tantamount to a mental illness. It is insidious. And it is characterized by self-delusion. The record before me clearly establishes "reason to believe" that absent a requirement of notification to Chan's employers he poses an immense risk to current and future employers who might innocently and unknowingly entrust him with access to their money and assets. The employer notification requirement is "reasonably necessary" to deter Chan from trying to steal again and to otherwise protect unsuspecting business employers from what Chan himself admits is the "always lurking" risk of his gambling addiction.

The Sentencing Guidelines further provide that any occupational restriction should be imposed "for the minimum time and to the minimum extent necessary to protect the public." USSG § 5F1.5(b). In light of the duration and severity of Chan's gambling disorder, I think it is appropriate that the employer notification condition continue throughout the term of his five-year probation.

Chan's contrary arguments against the employer notification condition are not convincing. First, he argues that he has no criminal history. That is true but what is relevant here is his gambling history. He is an inveterate gambling recidivist, and it is the gambling that consumes him and deludes him into stealing money to satisfy his addictive desires.

Chan relies on *United States v. Doe*, 79 F.3d 1309 (2d Cir. 1996), in which the Second Circuit reversed an employer notification condition involving an attorney/accountant defendant who was prosecuted for aiding and abetting a claim of a false tax deduction for $2,763 and who had no criminal history and who had fully cooperated with the Government. *Id.* at 1310, 1322. The *Doe* case had nothing to do with a defendant like Chan who stole hundreds of thousands of

dollars and who is afflicted by a decades-long pathological gambling disorder characterized by secrecy and self-delusion leading to the defalcation of an innocent party's funds.[2]

Far more apposite here is the Sixth Circuit's decision in *United States v. Ritter*, 118 F.3d 502 (6th Cir. 1997), which affirmed an employer notification requirement for a defendant who embezzled funds from a bank and who—like Chan—was less than forthcoming with his employer and family about his wrongdoing. *Id.* at 505. As the Sixth Circuit noted, "[t]he district court was rightly bothered by Ritter's reluctance to acknowledge his wrongdoing to those most likely to be potentially impacted." *Ibid.* And the Sixth Circuit was troubled that "unsuspecting employers might consider Ritter for a position of trust or one with easy access to valuables and thus become particularly vulnerable to a recurrence of criminal activity." *Id.* at 505. "Though we are sympathetic to Ritter's current plight, we note that it is largely self-inflicted. That Ritter is ashamed of his embezzlement conviction does not mean that he should be able to hide it from those who are particularly vulnerable to a repeat performance." *Id.* at 506; *see also United States v. Schechter*, 13 F.3d 1117 (7th Cir. 1994) (affirming employer notification condition for computer consultant who admitted to stealing $95,000 from three employers).

Chan argues that he has engaged in substantial rehabilitation. That is true, and his efforts to rehabilitate himself were important to me when I decided to impose a term of probation rather than a term of imprisonment as the Sentencing Guidelines would recommend. But his addiction is nearly life-long and he has relapsed before. Because I don't have confidence that he will not relapse again (or that it will be detected or immediately apparent if he does, such as if he pursues on-line gambling or other secretive activity), I think employer notification for the balance of his

---

[2] Apart from these obvious factual distinctions, the Second Circuit in *Doe* faulted the district court for failing even to make the necessary findings for an occupational restriction. *Id.* at 1323. Here, by contrast, I have made specific factual findings as required under 18 U.S.C. § 3563(b) and USSG § 5F1.5.

probation term is reasonably prudent and necessary to protect the public so that employers can decide if they wish to employ Chan and, if so, what precautions to take.

Chan also argues that it was improper for the Court to craft the employer notification condition in a manner that imposes an obligation on a third-party—the Probation Office—to report his conviction to his employer. Before addressing the merits of this argument, I will note by way of background that Chan had previously objected to a notification condition that was initially proposed by the U.S. Probation Office that would have required Chan himself to notify his employer of the risk he posed by reason of his conviction. Doc. #21 at 26. According to Chan, this proposed self-reporting condition was unconstitutional because it would "compel Mr. Chan to speak in a manner that violates his First Amendment right to free speech," and that "[t]he First Amendment generally prohibits the government from telling people what they must say." *Id.* at 27 (internal quotations omitted).

In light of Chan's First Amendment objection, the Court re-fashioned the proposed condition to impose the report-to-employer obligation on the Probation Office. Having previously protested that the First Amendment prohibits him from being compelled to tell his employer about his conviction, it is an exercise in contradiction for Chan now to complain that the employer notification obligation is improper because it was imposed on the Probation Office rather than on him directly.

Accordingly, I conclude that Chan is estopped from objecting to the employer notification condition on grounds that it imposes a reporting obligation on the Probation Office rather than on him directly. In any event, his objection is meritless as well. He misplaces his reliance on *United States v. Sweeney*, 914 F.2d 1260, 1263 (9th Cir. 1990), because *Sweeney* did not involve a condition of probation that required any action by the U.S. Probation Office.

Indeed, the U.S. Probation Office is an "arm of the court" whose officers are appointed by and subject to the direction of the U.S. District Court. *See United States v. Bernardine*, 237 F.3d 1279, 1282 (11th Cir. 2001). It is commonplace for a court to direct the conduct of probation officers, such as to carry out substance abuse testing. That direction is just what Congress intended. *See* 18 U.S.C. § 3602(a) ("A district court of the United States shall appoint qualified persons to serve, with or without compensation, as probation officers within the jurisdiction and *under the direction of the court* making the appointment.") (emphasis added).

Moreover, the notification condition at issue here requires Chan's own conduct in the first instance to report to the Probation Office the name and address of any employer for whom he is employed in a finance-related role. The additional obligation imposed on the Probation Office is integrally related to the disclosure obligation that is imposed on Chan himself (no different in nature than a probation officer's conducting of a drug test upon receiving a defendant's sample).

I note as well that the Sentencing Guidelines otherwise provide for a probation officer to contact third parties if necessary to warn them of risk. *See* USSG § 5B1.3(C)(12) (providing "Standard Condition" of probation that "[i]f the probation officer determines that the defendant poses a risk to another person (including an organization), the probation officer may require the defendant to notify the person about the risk and the defendant shall comply with that instruction. *The probation officer may contact the person and confirm that the defendant has notified the person about the risk.*") (emphasis added). At least where, as here, a defendant flies the flag of the First Amendment to protest having to tell his employer directly about his conviction, it is appropriate for a court to allow for direct notification by the Probation Office.

In short, there is an ample factual and legal basis for me to impose the employer notification condition that I did. It is reasonably related to Chan's crime and reasonably necessary in light of his mental illness to deter him from stealing again and to protect the public. Accordingly, I conclude that Chan has not shown a likelihood of success on the merits of his claim and to warrant a stay pending appeal of the employer notification condition.

*Irreparable harm*

Nor has Chan shown irreparable harm if the reporting condition is not stayed pending appeal. At sentencing he admitted that one of his three employers already knew about his guilty plea but had nonetheless not terminated his services. Doc. #45 at 23. After sentencing, his most significant employer learned from a news account about his guilty plea. This employer responded by reducing his hours from 35-40 hours per week down to 25 hours per week. Doc. #41 at 6. Because both these employers now know of his conviction independent of the notification condition (and both have continued to employ him), Chan cannot claim any irreparable harm resulting to his relationship with these two employers.

The last of Chan's three employers accounts for only five hours of work per week. *Ibid.* Assuming that the disclosure of his conviction to this employer would cause the termination of this employment (a dubious assumption in view that his other two employers have elected to keep him on the payroll), the loss of five hours per week of employment does not constitute irreparable harm.

Chan's claim that irreparable harm will result because he may be hurt when seeking jobs with future employers is equally unconvincing. To begin with, the employer notification condition applies only if he seeks a finance-related position, not to any other job position. Chan may seek *non*-finance-related work with any employer free from any reporting condition at all.

16

Moreover, employers' knowledge of his conviction has not stopped him to date from continuing to be employed in a financial role by two of his three current employers.

Chan states that it will be "impossible" for him to find a job in his chosen field "if each new employer must meet with a United States Probation Department Officer to discuss the details of Mr. Chan's criminal conviction." Doc. #41 at 7. This argument relies on a misstatement of the condition imposed. The condition I have imposed does not require any face-to-face meeting by an employer with the U.S. Probation Office but requires only that the Probation Office furnish certain public documents to the employer. It states in relevant part that "[t]he U.S. Probation Office shall within 7 days of notification [from Chan of contact information for his employer] furnish the employer a copy of the charging information, the plea agreement, and the judgment and order of conviction."[3]

The last thing to note about Chan's irreparable harm argument is that he agreed as part of his plea agreement with the Government that the U.S. Attorney's Office may notify his employers of the fact of his conviction. Having licensed the Government to tell any of his employers at any time about his conviction, Chan is in no position to complain that he will suffer irreparable harm if the Probation Office does what Chan has already agreed that the Government may itself freely do. Chan has not established irreparable harm if the Court does not enter a stay of the employer notification condition pending his appeal.

---

[3] Chan also relies on a *New York Times* article about a female who served 20 years in prison for murdering her four-year-old son and was then rejected for admission to a Harvard Ph.D. history program. *See* Doc. #41 at 7 (citing Eli Hager, *From Prison to Ph.D.: The Redemption and Rejection of Michelle Jones*, N.Y. Times, Sept. 13, 2017). Chan mischaracterizes the article to describe "how Harvard rescinded Ms. Jones's acceptance to study after it learned of her prior criminal conviction," *ibid.*, when in fact the article states that Ms. Jones was turned down only "after some professors raised concerns that she played down her crime in the application process." Despite Harvard's rejection, the *New York Times* article goes on to describe how Ms. Jones was actively courted while in prison by numerous universities and admitted to four other Ph.D. programs including at the University of California, Berkeley, the University of Michigan, the University of Kansas, and N.Y.U., where she now apparently studies. Ms. Jones' criminal conviction did not stand in the way of her success, and the fact that she could not get into Harvard offers little insight about whether Chan can land future bookkeeping jobs.

*Substantial Injury and the Public Interest*

The last of the factors I must consider is whether issuance of a stay will substantially injure the other parties interested in the proceeding and where the public interest lies. The fact of the matter is that "[i]t takes time to decide a case on appeal. Sometimes a little; sometimes a lot." *Nken*, 556 U.S. at 421. Delay of employer notification for however long that Chan's appeal may take will come at needless risk to innocent and unknowing employers who may entrust him with access to their assets and property.

True enough, if Chan ends up losing any work because of the employer notification condition, this will damage his ability to make restitution to the victim company. But the public interest does not demand that a *prior* employer's interest in receiving restitution from a crooked employee should come at the expense of *future* employers whose assets and funds will be put at risk. Chan should not be free to foist his risk of relapse on current or future employers. Accordingly, I conclude that the interests of innocent third parties and the protection of the public weigh in favor of denying Chan's motion to stay pending appeal.

## CONCLUSION

For the reasons stated, defendant Eddie Chan's motion to stay (Doc. #41) the employer notification condition of probation pending the disposition of his appeal is DENIED. In the event, however, that Chan wishes to seek a stay pending appeal from the U.S. Court of Appeals for the Second Circuit, I hereby GRANT a further extension of the temporary stay that I have previously entered (Doc. #40) to permit him to seek such relief. The temporary stay is extended for a period of 10 days until June 29, 2018, provided that Chan files by that date on this Court's docket a copy of a motion to stay that he has filed in the Court of Appeals. If he does not do so, then this temporary stay shall expire on June 29, 2018. If, however, Chan timely makes such a

filing for a stay in the Court of Appeals, then the temporary stay is further extended until the Court of Appeals may rule on his motion to stay.

It is so ordered.

Dated at New Haven this 19th day of June 2018.

/s/ *Jeffrey Alker Meyer*
Jeffrey Alker Meyer
United States District Judge